1

2                    **UNITED STATES DISTRICT COURT**

3                        **DISTRICT OF NEVADA**

4
                                              * * *
5

6    EMILE JENKINS II,                        Case No. 2:18-cv-01463-BNW

7                    Plaintiff,
                                              **ORDER**
8         v.

9    NANCY A. BERRYHILL, Acting
     Commissioner of Social Security,

10                   Defendant.

11

12         This matter was referred to the undersigned magistrate judge on consent under 28 U.S.C.

13   § 636(c).  (ECF No. 21.)  The case involves review of an administrative action by the

14   Commissioner of Social Security denying Plaintiff Emile Jenkins II's application for disability

15   insurance benefits and supplemental security income under Titles II and XVI of the Social

16   Security Act, respectively.  The court reviewed Plaintiff's motion for reversal or remand (ECF

17   No. 15), filed February 6, 2019; the Commissioner's response and cross-motion to affirm (ECF

18   Nos. 16, 17), filed March 8, 2019; and Plaintiff's reply (ECF No. 18), filed March 28, 2019.

19   **I.      BACKGROUND**

20         **1.      Procedural History**

21         On May 2, 2008, the Social Security Administration ("SSA") found Plaintiff disabled

22   under Titles II and XVI of the Act as of September 17, 2007.  AR[1] 39, 112.  In July 2014, the

23   SSA found Plaintiff no longer disabled as of July 31, 2014.  AR 39, 83-86.  The SSA upheld this

24   decision upon reconsideration.  AR 39.  A hearing was held before an Administrative Law Judge

25   ("ALJ") on March 17, 2017.  AR 58-79.  On July 18, 2017, the ALJ issued a decision finding that

26   Plaintiff was not disabled.  AR 39-51.  The ALJ's decision became the Commissioner's final

27

28         ───────────────
              [1] AR refers to the Administrative Record in this matter.  (Notice of Manual Filing (ECF No. 9)).

decision when the Appeals Council denied review on June 22, 2018. AR 1-6. Plaintiff, on August 8, 2018, commenced this action for judicial review under 42 U.S.C. §§ 405(g). (*See* IFP App. (ECF No. 1)).

## II. DISCUSSION

### 1. Standard of Review

Administrative decisions in social security disability benefits cases are reviewed under 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides." The court may enter "upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.*

The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005). But the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). In determining whether the Commissioner's findings are supported by substantial evidence, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

Under the substantial evidence test, findings must be upheld if supported by inferences reasonably drawn from the record. *Batson*, 359 F.3d at 1193. When the evidence will support more than one rational interpretation, the court must defer to the Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Consequently, the issue before the court is not whether the Commissioner could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence. It is incumbent on the ALJ to make specific findings so that the court does not speculate as to the basis of the findings when determining if the Commissioner's decision is supported by substantial evidence. Mere cursory findings of fact without explicit statements as to what portions of the evidence were accepted or rejected are not sufficient. *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981). The ALJ's findings "should be as comprehensive and analytical as feasible, and where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based." *Id.*

**2.      Termination of Disability Benefits Evaluation Process and the ALJ Decision**

After a person is found to be entitled to disability benefits, the Commissioner is required to periodically review whether continued entitlement to such benefits is warranted using a multi-step sequential evaluation process. 20 C.F.R. §§ 404.1594, 416.994 (2017). Such a person is no longer entitled to benefits when substantial evidence demonstrates (1) "there has been any medical improvement in the [claimant's] impairment" and (2) the claimant "is now able to engage in substantial gainful activity." 42 U.S.C. § 423(f)(1)(A)-(B). To determine whether there has been medical improvement, an administrative law judge (ALJ) must compare the current medical severity of the claimant's impairment to the medical severity of the impairment "at the time of the most recent favorable medical decision that [the claimant] w[as] disabled or continued to be disabled." *Attmore v. Colvin*, 827 F.3d 872, 873 (9th Cir. 2016) (citing 20 C.F.R. § 404.1594(b)(7)); *see also* 20 C.F.R. § 404.1594(b)(7) (2017). In "termination cases where the ALJ finds a claimant is disabled (or continues to be disabled) in one decision and, in a later decision, finds the claimant has medically improved[,]" the "most recent favorable medical decision is an earlier decision, and severity of the claimant's impairment at the time of that

decision provides the relevant baseline for comparison." *Attmore*, 827 F.3d at 876. The most recent favorable medical decision is also known as the comparison point decision ("CPD").

The ALJ follows an eight-step sequential evaluation process in determining whether an individual continues to be disabled under Title II and a seven-step sequential evaluation process to determine whether an individual continues to be disabled under Title XVI. *See* 20 C.F.R. §§ 404.1594 and 416.994.

Step one of the Title II evaluation process requires the ALJ to determine whether the individual is engaged in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1594(f)(1). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities usually, but not necessarily, for pay or profit. *Id.* § 404.1572(a)-(b). If the individual is engaged in SGA, then a finding of no longer disabled is made. *Id.* § 404.1594(f)(1). If the individual is not engaged in SGA, then the analysis proceeds to step two. Title XVI claims do not require a SGA analysis. *Id.* § 416.994(b)(5).

Step two under Title II and step one under Title XVI require the ALJ to determine whether the individual's impairments or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. If the individual's impairment or combination of impairments meets or equals the criteria of a listing, his disability continues. *Id*. § 404.1594(f)(2) and 416.994(b)(5)(i). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing, then the analysis proceeds to steps three and two, respectively.

Step three under Title II and step two under Title XVI address whether the individual has experienced medical improvement. *Id.* §§ 404.1594(f)(3), 416.994(b)(5)(ii). Medical improvement is "any decrease in the medical severity of the impairment(s)" that was present at the time the individual was determined to be disabled. *Id.* §§ 404.1594(b)(1), 416.994(b)(1)(i). A finding that there has been a decrease in medical severity must be based on changes in the symptoms, signs, or laboratory findings associated with the impairment. *Id.* In assessing whether medical improvement has occurred, the medical severity of the impairments present at the time of

the most recent favorable decision of disability is compared to the current medical severity of those same impairments. *Id.* §§ 404.1594(b)(7), 416.994(b)(5)(vi). If there has been medical improvement, the analysis proceeds to the fourth step under Title II and the third step under Title XVI. If no medical improvement has occurred, the analysis proceeds to the fifth step for the Title II claim and the fourth step for the Title XVI claim.

At step four under Title II and step three under Title XVI, respectively, the ALJ must determine whether the medical improvement is related to the individual's ability to work. *Id.* §§ 404.1594(f)(4), 416.994(b)(5)(iii). If so, the analysis proceeds to step six under Title II and step five under Title XVI.

At step five under Title II and step four under Title XVI, the ALJ must determine if an exception to medical improvement applies. *Id.* §§ 404.1594(f)(5), 416.994(b)(5)(iv). There are two groups of exceptions. *Id.* §§ 404.1594(d)-(e), 416.994(b)(3)-(4). If an exception from the first group applies, the analysis proceeds to the next step. If an exception from the second group applies, the individual's disability ends. If no exception applies, the individual's disability continues.

Step six under Title II and step five under Title XVI require the ALJ to determine whether all the individual's current impairments in combination are severe. *Id.* §§ 404.1594(f)(6), 416.994(b)(5)(v). If all the current impairments do not significantly limit the individual's ability to do basic work activities (i.e., are not severe), the individual is no longer disabled. If they do, the analysis proceeds to the next step.

At step seven under Title II and step six under Title XVI, the ALJ must assess the individual's residual functional capacity ("RFC") based on the current impairments and determine if he can perform his past relevant work. *Id.* §§ 404.1594(f)(7), 416.994(b)(5)(vi). If the individual has the capacity to perform past relevant work, his disability has ended. If not, the analysis proceeds to the last step.

At the last step, if the individual cannot perform past relevant work, the ALJ must determine whether there is alternative work in the national economy that the individual can perform given his age, education, work experience, and RFC. *Id.* §§ 404.1594(f)(8), 416.994. If

the individual cannot perform other work, he remains disabled despite medical improvement. But if he can perform other work, the individual is no longer disabled.

Here, the ALJ identified the CPD as the May 2, 2008 decision finding Plaintiff disabled as of September 17, 2007. AR 41. At the time of the CPD, Plaintiff suffered from the following medically determinable impairments: internal injury, status-post gunshot wounds with poor ambulation. *Id.*

The ALJ then followed the eight and seven-step sequential evaluation processes set forth in 20 C.F.R. §§ 404.1594 and 416.994 under Titles II and XVI, respectively. AR 41-50.

At step one under Title II, the ALJ found that Plaintiff had not engaged in SGA since his disability ended on July 31, 2014. AR 41.

At step two of the Title II analysis and step one of the Title XVI analysis, the ALJ determined that Plaintiff had the medically determinable impairments of status-post gunshot wound, degenerative disc disease of the lumbar spine, peripheral neuropathy, degenerative changes in Plaintiff's toes, and arthritis in the bilateral feet, but that these impairments did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 41-43.

At step three of the Title II analysis and step two of the Title XVI analysis, the ALJ determined that Plaintiff experienced medical improvement as of July 31, 2014. AR 43-44. The ALJ specifically noted Plaintiff "ambulated without any assistive device[;]" "demonstrated lumbar range of motion within reasonable limits[;]" demonstrated "full motor strength in his flexors, knee, extensors, plantar flexion, dorsiflexion, and great toe extension[;]" and demonstrated "normal gait, full strength, normal tone, and intact sensation[.]" AR 44.

At step four of the Title II analysis and step three of the Title XVI analysis, the ALJ determined that Plaintiff's medical improvement related to his ability to work because, as of July 31, 2014, Plaintiff's impairments no longer met or medically equaled the same listing that was met at the time the Commissioner determined Plaintiff was disabled. AR 44. Specifically, the ALJ found that Plaintiff no longer had "the degree of difficulty in ambulating as defined in

[listing] 1.00B2b" as evidenced by (1) normal electromyogram and nerve conduction study results and (2) pain management specialist records noting Plaintiff's normal gait. *Id.*

Because Plaintiff's medical improvement related to his ability to work, the ALJ proceeded to steps six and five under Title II and Title XVI, respectively. *Id.* At this step, the ALJ determined that although Plaintiff experienced medical improvement, he continued to have a severe impairment or combination of impairments. *Id.*

Next, at steps seven and six under Titles II and XVI, respectively, the ALJ determined Plaintiff's RFC and found that Plaintiff could perform sedentary work except that he could lift or carry ten pounds occasionally and five pounds frequently; he should not climb ladders, ropes, or scaffolds; he could stand or walk for two hours in an eight-hour work day; he could sit up to six hours in an eight-hour work day; he could have a sit/stand option; and he could occasionally do all other postural activities. *Id.* The ALJ also found that Plaintiff has no past relevant work. AR 49.

Finally, at the last step under Titles II and XVI, respectively, the ALJ determined that Plaintiff, considering his age, education, work experience, and RFC, could work as an order clerk, mail clerk, and document preparer. AR 49-50. Because the ALJ found these jobs existed in significant numbers in the national economy, he concluded that Plaintiff was no longer disabled as of July 31, 2014. AR 50.

### 3. Analysis

#### a. Whether substantial evidence supports the ALJ's finding that Plaintiff experienced medical improvement

##### i. The parties' arguments

Plaintiff first moves to remand this matter on the grounds that substantial evidence does not support the ALJ's finding of medical improvement. Plaintiff concedes that he experienced medical improvement but argues the improvement "does not rise to the level alleged by the ALJ." This is because, as Plaintiff argues, the ALJ erred in finding Plaintiff had a normal gait up to January 2016. In support of this argument, Plaintiff asserts that the ALJ overlooked the treatment

notes of Plaintiff's treating physician Dr. Joseph Reyes, D.O. According to Plaintiff, Dr. Reyes'

treatment notes, spanning eight months, evidence an antalgic gait and bilateral ankle pain with

extension and flexion.

      The Commissioner agrees with Plaintiff with respect to the ALJ's mischaracterization of

when Dr. Reyes began noting Plaintiff's antalgic gait. But the Commissioner argues that the

ALJ, in relying on "objective evidence, treatment notes from Plaintiff's providers, and multiple

medical opinions[,]" properly determined that Plaintiff experienced medical improvement

because Plaintiff no longer required a two-handed assistive device to ambulate.

      Plaintiff replies that a two-handed assistive device is not required for a finding that he

cannot ambulate effectively.

### ii.      The ALJ's decision

      The ALJ found that Plaintiff experienced medical improvement as of July 31, 2014

because he "ambulated without any assistive device[;] "demonstrated lumbar range of motion

within reasonable limits[;]" "had full motor strength in his hip flexors, knee, extensors, plantar

flexion, dorsiflexion, and great toe extension[;]" and demonstrated "normal gait, full strength,

normal tone, and intact sensation" in "subsequent" physical examinations. AR 43-44. The ALJ

assigns little weight to Dr. Reyes' opinion, concluding that the treating physician's treatment

records do not support the doctor's opinion. AR 48. The ALJ states that Dr. Reyes only noted

Plaintiff's antalgic gait beginning in January 2016.[2] *Id.*

### iii.      What constitutes substantial evidence

      The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than

a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss

v. Barnhart*, 427 F.3d at 1214 n.1. In determining whether the Commissioner's findings are

supported by substantial evidence, the court "must review the administrative record as a whole,

---

[2] The record indicates that Dr. Reyes first noted Plaintiff's antalgic gait on May 28, 2015. AR
709. The record further indicates that Dr. Reyes first noted that Plaintiff's antalgic gait is "affected by a
right leg limp" on December 9, 2015. AR 836.

weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

Under the substantial evidence test, findings must be upheld if supported by inferences reasonably drawn from the record. *Batson*, 359 F.3d at 1193. When the evidence will support more than one rational interpretation, the court must defer to the Commissioner's interpretation. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) ("[W]hen the evidence is susceptible to more than one rational interpretation" the court will not reverse the ALJ's decision). Consequently, the issue before the court is not whether the Commissioner could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence.

### iv. Whether substantial evidence supported the ALJ's finding of medical improvement

As Plaintiff correctly notes, the ALJ inaccurately referenced when Dr. Reyes first observed Plaintiff's antalgic gait. AR 46. Whereas the ALJ cited the date January 2016, AR 46, the record reveals Dr. Reyes first noted Plaintiff's antalgic gait on May 28, 2015. AR 709. But this error is harmless because, despite the discrepancy in dates, the ALJ evaluated and discredited this evidence on other grounds. AR 46. In fact, the ALJ stated that despite Dr. Reyes' observations that Plaintiff suffered from an antalgic gait, experienced "pain with range of motion in his right ankle[,]" "continued to have diminished reflexes in his right knee and ankle, tenderness on palpation, and limited active range of motion[,]" Dr. Reyes also observed that Plaintiff, nonetheless, "continued to demonstrate full strength in all major muscle groups and normal overall tone." *Id*.

The ALJ also did not exclusively rely on Dr. Reyes' opinion in determining that Plaintiff experienced medical improvement sufficient to terminate disability benefits. He also relied on the opinion of treating physician Dr. Rainer Vogel, M.D.; the opinions of agency medical examiners; Plaintiff's two lumbar spine MRIs performed on May 28, 2013 and May 5, 2014; and Plaintiff's electromyogram ("EMG") and nerve conduction study ("NCS") completed on August

11, 2014. AR 44-46. Dr. Vogel's treatment notes indicate that Plaintiff had a normal gait, normal muscle strength, and normal tone even though Plaintiff did have limited range of motion in his back and pain with range of motion in his back with right and left-sided rotation. *See, e.g.,* AR 506 (November 12, 2013); 511 (December 9, 2013); 516 (January 13, 2014); 521 (February 10, 2014). Similarly, Dr. Reyes' treatment notes, beginning April 9, 2014 through April 27, 2015, indicated that Plaintiff had a normal gait, normal muscle strength, and normal tone even though Plaintiff did experience limited range of motion in his back and pain with range of motion in his back with right and left-sided rotation. *See, e.g.,* AR 646-647 (April 9, 2014); 651-652 (May 8, 2014); 656-657 (June 5, 2014); 661 (July 3, 2014); 666-667 (September 11, 2014); 671-672 (October 9, 2014); 703 (April 27, 2015). Additionally, agency medical examiners, including Dr. Mayenne Karelitz, M.D. and Dr. George Nickles, M.D., found that Plaintiff could ambulate without any assistive device and had a range of motion of the lumbar spine that was "within reasonable limits." AR 559, 568. Further, Plaintiff's May 2014 MRI impressions, which were unchanged from a previous 2013 study, identified "some abnormalities in the claimant's lumbar spine, but nothing to support disabling symptoms." AR 45, 751-753. Similarly, Plaintiff's August 2014 EMG test "found no evidence of active denervation changes in the bilateral lower extremities or the bilateral lumbosacral paraspinal muscles, suggestive of a normal EMG examination." Plaintiff's NCS exam, conducted on the same date as the EMG, was "also suggestive of normal motor, sensory, and reflex nerve conduction responses of the bilateral lower extremities." AR 46, 594, 674.

Finally, Plaintiff correctly argues in his reply that a two-handed assistive device is not the exclusive factor in determining ambulation. Even though the ALJ does reference the fact that Plaintiff does not require an assistive device to ambulate, he does not rely exclusively on this fact in making his determination that Plaintiff experienced medical improvement. AR 44. Rather, the ALJ also cites to Plaintiff's lumbar spine range of motion being "within reasonable limits[;]" Plaintiff's "full" motor strength; Plaintiff's "normal" tone; and "intact sensation" to conclude that Plaintiff achieved medical improvement. Of note, the ALJ's conclusion is supported by (1) the medical opinions of Dr. Reyes, Dr. Vogel, Dr. Karelitz, and Dr. Nickles and (2) objective medical

evidence, including two lumbar spine MRIs, an EMG exam, and a NCS exam. *Id*. Accordingly, substantial evidence supports the ALJ's decision to find Plaintiff experienced medical improvement, and as such, the court must affirm the ALJ's decision. *See Thomas*, 278 F.3d at 954.

      **b.**    **Whether the ALJ properly discounted the opinion of treating physician Dr. Joseph Reyes, D.O. in determining Plaintiff's RFC**

              **i.**    **The parties' arguments**

Plaintiff next moves to remand on the grounds that the ALJ did not provide specific and legitimate reasons for rejecting the opinion of treating physician Dr. Joseph Reyes, D.O. The Commissioner argues that the ALJ properly evaluated and discounted Dr. Reyes' opinion. Plaintiff replies that the ALJ's mischaracterization of when Dr. Reyes first noted Plaintiff's antalgic gait is a non-harmless error because "it is not clear from this record the extent the ALJ took the incorrect factual assessment into consideration when affording little weight to Dr. Reyes."

              **ii.**    **Dr. Reyes' opinion and the ALJ's decision**

Dr. Reyes treated Plaintiff from March 10, 2014 through at least February 21, 2017. He opined that Plaintiff could stand, walk, and sit for fewer than two-and-a-half hours in an eight-hour workday; could lift and carry less than one pound for fewer than two-and-a-half hours in a workday; and could not bend or kneel. AR 754-755. Dr. Reyes also opined that Plaintiff could perform less than a full range of sedentary work; was unable to perform the minimal standing or walking requirement for sedentary work; and was unable to engage in prolonged sitting. AR 755.

The ALJ gave little weight to Dr. Reyes' opinion because it was unsupported by the doctor's treatment record, explaining that "[e]ven after the claimant's gait was noted to be antalgic, Dr. Reyes observed that the [plaintiff's] strength, tone, and sensation were all within normal limits . . . ." AR 48.

//

//

### iii. Whether the ALJ erred in rejecting Dr. Reyes' opinion

The ALJ provided specific and legitimate reasons for discounting Dr. Reyes' opinion, namely, inconsistencies between Dr. Reyes' restrictions and the doctor's own clinical findings. AR 48; *see Morgan*, 169 F.3d at 603 (internal inconsistencies within a doctor's report constitutes a legitimate basis for rejecting report). The ALJ noted the following inconsistencies: Dr. Reyes opined that Plaintiff had a limited range of motion in his back, but also that Plaintiff had "full strength in all major muscle groups, normal overall tone, and intact sensation" that was inconsistent with a limited range of motion. AR 47. Dr. Reyes also wrote that Plaintiff had an antalgic gait,[3] but did not conclude that Plaintiff was unable to ambulate effectively. The ALJ's findings are supported by the record. *See, e.g.,* AR 674, 709, 842, 846, 863, 869.

Accordingly, because central to the ALJ's determination were the internal inconsistencies in Dr. Reyes' records, and because an ALJ may discount a treating physician's opinion if it is contradicted by the physician's own notes, the court must affirm the ALJ's decision. *See Morgan*, 169 F.3d at 603; *see also Connett,* 340 F.3d at 875 (a physician's opinion may be rejected if it is unsupported by the physician's treatment notes).

### c. Whether the ALJ provided the vocational expert a hypothetical that properly reflected Plaintiff's limitations

### i. The parties' arguments

Plaintiff next moves to remand this matter on the grounds that the ALJ provided an incomplete hypothetical to the vocational expert ("VE"). The Plaintiff argues that the hypothetical posed was incomplete because the ALJ referenced a "sit/stand" option as only a possible

---

[3] Beginning in May 2015, Dr. Reyes noted that Plaintiff had an antalgic gait. AR 709. But Dr. Reyes continued to note that Plaintiff had normal tone and normal muscle strength. *Id.*; *see also, e.g.,* AR 842, 846. Plaintiff asserts that the ALJ's mischaracterization of when Dr. Reyes first observed Plaintiff's antalgic gait is material because the record is unclear as to the "extent the ALJ took this incorrect factual assessment into consideration when affording little weight to Dr. Reyes." The ALJ did improperly note when Dr. Reyes first found Plaintiff's gait antalgic, but it appears to the court that even if the ALJ properly noted the date as May 2015 (as opposed to January 2016), the ALJ's findings would remain the same. This is because the ALJ discounts Dr. Reyes' opinion for continuing to find Plaintiff's "strength, tone, and sensation . . . within normal limits." AR 48. Dr. Reyes' findings as to Plaintiff's strength, tone, and sensation read the same from May 2015 through and post-January 2016. Even as recently as February 21, 2017, Dr. Reyes notes Plaintiff has normal muscle strength and overall tone though Dr. Reyes continues to note that Plaintiff has an antalgic gait that is "affected by a right leg limp"[.] AR 869.

1 | limitation.  The Commissioner responds that the ALJ provided the VE a hypothetical that
2 | included all of Plaintiff's possible limitations, including possibly requiring a "sit/stand" option.

### ii.    The ALJ's hypothetical

4 | The ALJ found that Plaintiff had the RFC to perform sedentary work and asked the VE
5 | whether Plaintiff could perform any jobs with the following limitations: ". . . ten pounds
6 | occasionally, five pounds frequently, stand and walk up to two in eight, sit up to six in eight with
7 | occasional postural all, and no ladders, ropes and scaffolds."  AR 72.  The ALJ subsequently
8 | added to his hypothetical to the VE, "Given these limitations, **and possibly even a sit/stand**
9 | **option**, if there is anything for that in the sedentary range, would there be any jobs that the
10 | individual could perform with those limitations?"  AR 72-73 (emphasis added).  The VE replied
11 | that Plaintiff could work as an order clerk, mail clerk, or a document preparer.  AR 73.

### iii.   Requirements for the ALJ's hypothetical

13 | The ALJ's hypothetical must be based on medical assumptions supported by substantial
14 | evidence in the record and reflect all of a plaintiff's limitations.  *Osenbrook v. Apfel*, 240 F.3d
15 | 1157, 1165 (9th Cir. 2001).  The hypothetical should be "accurate, detailed, and supported by the
16 | medical record."  *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999); *see also Belanger v.*
17 | *Berryhill*, 685 F. App'x 596, 601 (9th Cir. 2017) (holding that the hypothetical an ALJ poses to a
18 | VE must incorporate all of a plaintiff's limitations as supported by the medical record).

19 | Social Security Regulations require an RFC assessment to "be specific as to the frequency
20 | of the individual's need to alternate sitting and standing."  SSR 96-7p.  The regulations further
21 | provide that "[i]t may be especially useful in these situations to consult a vocational resource in
22 | order to determine whether the individual is able to make an adjustment to other work."  *Id.*
23 | Relying on these regulations, the Seventh Circuit has held that when providing a VE with a
24 | hypothetical that involves a "sit/stand" option, the ALJ must specify the frequency of when the
25 | plaintiff can sit or stand or whether the plaintiff can choose to sit or stand whenever he deems it

necessary.[4]  *Arnett v. Astrue*, 676 F.3d 586, 593-594 (7th Cir. 2012).  The court finds this holding persuasive.

### iv.     Whether the ALJ provided the vocational expert with a proper hypothetical

The ALJ did not provide the VE with a detailed hypothetical that outlined the terms of the "sit/stand" option (e.g., the frequency of when Plaintiff can sit or stand).  AR 72.  In fact, the ALJ simply asked the VE to consider a hypothetical with "possibly even a sit/stand option[.]"  AR 72-73.  Accordingly, the court holds that the ALJ erred by providing a hypothetical to the VE that did not include the precise limitations relating to Plaintiff's "sit/stand" option.  *See Tackett*, 180 F.3d at 1101; *see also Belanger,* 685 F. App'x at 601 ("The hypothetical posed to the vocational expert at steps four and five must include all of a [plaintiff's] limitations.") (citing *Embrey v. Bowen*, 849 F.2d 418, 423 (9th Cir. 1988)).

The court must now determine whether this error was harmless.  The ALJ, in making his non-disability determination, relied on the VE's testimony that Plaintiff could engage in work that exists in significant numbers in the economy.  But because the VE's testimony could have resulted in a different outcome had the ALJ provided him with more details relating to Plaintiff's "sit/stand" limitation, the error is not harmless.  *See, e.g., Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012); *Hamilton v. Commissioner of Social Sec. Admin.,* 464 F. App'x 681, 682 (9th Cir. 2012); *Edlund v. Massanari*, 253 F.3d 1152, 1160 (9th Cir. 2001) (citing *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir.1991)) ("If the hypothetical does not reflect all the claimant's limitations . . . the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy.").  Accordingly, the court remands for further findings consistent with this order.

## IV.     CONCLUSION AND ORDER

Accordingly, IT IS HEREBY ORDERED that Plaintiff's motion to remand (ECF No. 15) be GRANTED in part and DENIED in part.  It is GRANTED to the extent the court remands this case for further proceedings and DENIED in all other respects.

---

[4] The court is unaware of any controlling Ninth Circuit precedent on this point.

IT IS FURTHER ORDERED that this case be REMANDED for further proceedings regarding Section (c) of this Order.

IT IS FURTHER ORDERED that the Commissioner's cross-motion to affirm (ECF Nos. 16, 17) be DENIED.

IT IS ORDERED that the Clerk of Court must enter judgment in favor of Plaintiff Emile Jenkins II and against Defendant Commissioner of Social Security.

DATED: February 7, 2020

_____
BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE